**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**FREDDIE MCCOY,**

       **Plaintiff,**                              Case No. 06-10837

vs.                                               HONORABLE DENISE PAGE HOOD

**STATE OF MICHIGAN, MICHIGAN**
**DEPARTMENT OF CORRECTIONS,**
**JEANE HIGGINS, KENNETH ROMANOWSKI,**
**GERALD CONWAY, EDDIE CARGOR,**
**KATHY WARNER, JOHN JUNGLING,**
in their individual and official capacities,

       **Defendants.**

_____/

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss, filed on March 31, 2006. Plaintiff, Freddie McCoy, filed a Response to Defendants' Motion to Dismiss on April 21, 2006.

**II.   STATEMENT OF FACTS**

On February 24, 2006, Plaintiff filed the instant civil rights action alleging race discrimination and retaliatory discharge pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Additionally, pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his Fourteenth Amendment rights under the Equal Protection and Due

1

Process Clauses, as well as that Defendants violated his First Amendment rights. Lastly, Plaintiff alleges that Defendants violated Michigan's Elliot Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2201 *et seq.,* by subjecting him to improper treatment based on his race and terminating his employment with Defendant Michigan Department of Corrections (MDOC) in retaliation for vocal and written opposition to Defendants' discriminatory conduct.

On April 30, 1989, Plaintiff was hired as a Corrections Officer for the MDOC's Huron Valley Correctional Facility located in Ypsilanti, Michigan. (Pl.'s Compl. ¶12) Plaintiff was also a union steward from approximately 1999 through 2003. (Pl.'s Compl. ¶ 13) In this capacity, he was involved in filing numerous internal complaints, and complaints with the EEOC, alleging racial discrimination. (*Id.*) Specifically, Plaintiff made numerous complaints regarding disparate and selective discipline of African-American employees for work rule violations versus their Caucasian counterparts, who committed the same infractions. (Pl.'s Compl. ¶ 14) Plaintiff asserts that Defendants repeatedly rebuffed his concerns and told him to mind his own business. (Pl.'s Compl. ¶ 15)

On June 14, 2004, Plaintiff was working the 10:00 p.m. to 6:00 a.m shift, assigned to Housing Unit 4. (Pl.'s Compl. ¶ 16) Officer Zajdel did not relieve Plaintiff for his contractually-provided lunch break. (Pl.'s Compl. ¶ 17) At 3:30 a.m., Plaintiff contacted his supervisor, Defendant Jeanne Higgins, who is Caucasian, and requested permission to take his lunch. (Pl.'s Compl. ¶¶ 18-19) Defendant Higgins granted Plaintiff's request. (Pl.'s Compl. ¶ 18) At 4:30 a.m., after Plaintiff conducted formal count, and while there was no inmate movement, Plaintiff went to the inmates' dining hall, ate lunch, and returned a few minutes later. (Pl.'s Compl. ¶¶ 20-21) Despite having given Plaintiff permission to take his lunch break, Defendant Higgins

watched Plaintiff leave his post on the facility's television monitors and later accused him of leaving his post and violating various policies. (Pl.'s Compl. ¶ 22)

Plaintiff was subsequently charged with violating work rule #30 (proper duty relief) and work rule #31 (failure to take safety precautions). (Pl.'s Compl. ¶ 24) Plaintiff asserts that no employee has ever been charged and found in violation of work rules for receiving authorization to take a contractually-authorized lunch break, in fact, it was the custom and/or policy and/or practice for employees to take their lunch break without relief, without being disciplined. (Pl.'s Compl. ¶¶ 26-27) Further, Caucasian employees have left their posts without relief or permission and have not been disciplined. (Pl.'s Compl. ¶ 29)

In August 2004, Plaintiff was told by Defendant Jungling that he was not permitted to bring any papers to work. (Pl.'s Compl. ¶ 31) Plaintiff asserts this was due to his prior involvement with filing racial and gender discrimination complaints with Defendant MDOC's administration. Plaintiff alleges that Defendants deliberately and intentionally harassed, negatively evaluated, and retaliated against him because of his race, and protected union activity (Pl.'s Compl. ¶¶ 33-34) Plaintiff also alleges that he filed complaints to Defendant Romanowski, regarding Plaintiff's Caucasian supervisors' conduct, who came to work intoxicated, but his concerns were likewise rebuffed. (Pl.'s Compl. ¶ 35)

On September 15, 2004, Plaintiff was terminated from employment. (Pl.'s Compl. ¶25) At Plaintiff's pre-termination hearing, Defendants failed to provide investigatory notes and other evidence supporting the decision to terminate Plaintiff from employment with Defendant MDOC. (Pl.'s Compl. ¶36)

### III.     APPLICABLE LAW & ANALYSIS

## A.      Standard of Review

Rule 12(b)1 motions fall into two general categories: facial attacks and factual attacks. *See* Fed. R. Civ. P.12(b)(1); *see also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A facial attack challenges the pleading itself. In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party. *Id.* Where subject matter jurisdiction is factually attacked, as is the case in this instance, Plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action over which it lacks jurisdiction.

Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56. The court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.

*Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

### B. Defendants' Motion to Dismiss

Defendants assert that this is the fifth time Plaintiff has filed a lawsuit in connection with his employment with Defendant MDOC. Defendants argue that this Court lacks subject matter jurisdiction pursuant to the Full, Faith and Credit Act, 28 U.S.C. § 1738, which prevents Plaintiff from presenting issues and claims which have been fully litigated or could have been litigated in Plaintiff's previous state and federal court actions. Defendants also argue that Plaintiff's § 1983 claims against the State are barred by Eleventh Amendment immunity. Defendants further assert that the individual actions of Defendants are entitled to protection under the doctrine of qualified immunity because Plaintiff has failed to establish that Defendants were violating clearly established law of which they should have known. Defendants also argue that Plaintiff has failed to establish Procedural Due Process, Equal protection, and First Amendment violations. Lastly, Defendants argue that they are entitled to dismissal of Plaintiff's Title VII claims against them as they cannot be held individually liable under the Act.

### C. Res Judicata

The Full Faith and Credit Act, 28 U.S.C § 1738, requires a federal court to give a prior state court action, "the same preclusive effect it would have under the law of the state whose court issued the judgment." *Heyliger v. State Univ. & Community College Sys.*, 126 F.3d 849, 851-52 (6th Cir. 1997). In Michigan, "[r]es judicata bars a subsequent action between the same parties when . . . (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. *Dart v. Dart*, 460 Mich. 573, 585; 597 N.W.2d 82 (1999).

Defendants argue that Plaintiff's prior lawsuits, specifically a 1999 case filed in Ingham County Circuit Court, No. 99-90035-NZ, alleging that he was disciplined in a discriminatory manner due to his gender, and a 2001 case filed in this Court, No. 01-73785, alleging that Defendant MDOC, Warden Andrew Jackson, Defendant John Jungling, Deputy William Ray, and Inspector Donald Prough discriminated against him based on gender, race and retaliation. Defendants also assert that Plaintiff has two pending cases in Genesee County Circuit Court, against the Michigan Department of Civil Rights in connection with complaints filed involving his employment.

Plaintiff counters that this case is different and distinct and involves an entirely separate set of facts and circumstances than Plaintiff's previous litigation. Plaintiff argues that the instant matter before this Court involves Plaintiff's September 2004 termination due to an incident that occurred in June 2004. As such, Plaintiff's claim could not have been resolved in Plaintiff's 1999 and 2001 cases as the circumstances that this suit are based upon, had not yet occurred, as well as the fact that the prior cases involve different parties.

It appears that only two current defendants were named in one of Plaintiff's previous lawsuits. Defendants MDOC and John Jungling were sued in Plaintiff's 2001 lawsuit, however, this does not prevent the Court from hearing this matter. While these two Defendants were named in Plaintiff's previous suit, the facts of this action are not identical to the facts in Plaintiff's 2001 case, as the facts of this matter involve incidents occurring in 2004. Additionally, Plaintiff's Complaint specifically discusses Defendant Jungling's actions in 2004. Defendants have not demonstrated that this Court lacks jurisdiction under the Full, Faith and Credit Act, as elements two and three have not been established. Application of *res judicata* is

inappropriate because Plaintiff's claims in this action were not, and could not have been resolved in Plaintiff's previous actions, and the actions do not involve the same parties or their privies.

### D. Plaintiff's Fourteenth Amendment Equal Protection, Elliot Larsen Civil Rights Act, and Title VII claims

The burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) is also applicable to Michigan's Elliott-Larsen Act, as well Plaintiff's Equal Protection Claim. *See Allen v. Comprehensive Health*, 222 Mich. App. 426, 429, 564 N.W.2d 914 (1997); *see also Gutzwiller v. Fenik*, 860 F. 2d 1317, 1325 (6th Cir. 1988)("[T]he showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983.").

Under *McDonnell Douglas*, a plaintiff establishes a prima facie case and creates a presumption of discrimination by showing by a preponderance of the evidence: (1) that he/she belongs to a protected class; (2) that he/she was subjected to an adverse employment action; (3) that he/she was qualified for the job; and (4) that he/she was treated differently from similarly situated employees from a non-protected class. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); and *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1991). Alternatively, a plaintiff could establish a prima facie case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F. 2d 111 (6th Cir. 1987); *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582, note 4 (6th Cir. 1992).

If a plaintiff proves a prima facie case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell*

*Douglas*, 411 U.S. at 802. Even though the burden of going forward is on the defendant once a plaintiff has established a prima facie case, the ultimate burden of persuasion never shifts from the plaintiff. *Id*. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id*.; *Ang v. Proctor & Gamble Co.*, 932 F. 2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F. 2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

The Court finds that Plaintiff has stated claims upon which relief may be granted under the Equal Protection Clause of the Fourteenth Amendment, Michigan's Elliot Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2201 *et seq*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Taking the allegations in Plaintiff's Complaint as true, Plaintiff has stated that he was a member of a protected class, that he was subjected to such adverse employment actions as harassment, discipline and eventual termination, that he was qualified for his job, and that similarly situated individuals were not subjected to the same adverse employment actions.

### E.     Fourteenth Amendment Due Process claim

The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of life, liberty, and property without constitutionally adequate procedures. *See Mitchell v. Frankhauser*, 375 F.3d 477, 479-80 (6th Cir. 2004). This Court must determine (1) whether the plaintiff has a

property interest entitled to due process protection and (2) if the plaintiff has such a protected property interest, the Court must determine what process is due*.  Id.*

Plaintiff has likewise stated a procedural due process claim upon which relief can be granted.  Plaintiff has stated a claim that he has a property interest in his continued employment as a corrections officer which entitles him to due process protection.  *See Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 542 (1985).  Under the Due Process Clause, Plaintiff is entitled to a pre-termination hearing before being discharged from employment.  *Id.*   This hearing "need not be elaborate . . . something less than a full evidentiary hearing is sufficient . . . ."  *Id.* (internal citations and quotations omitted ).  The United States Supreme Court has upheld procedures that afford the employee an opportunity to have access to the material upon which the charge and decision are based, to respond orally and present rebuttal affidavits.  *See Davis v. Scherer*, 468 U.S. 183, 192 (1984).  Plaintiff alleges that he was not afforded an opportunity to review Defendants' investigatory notes during his hearing, and if true, this may indicate Plaintiff was not provided minimum due process procedures at his pre-termination hearing.

**F.     First Amendment claim**

Plaintiff must establish the following to state a claim under the First Amendment: (1) Plaintiff was engaged in a constitutionally protected activity; (2) that Defendants adverse actions caused Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse actions were motivated at least in part as a response to Plaintiff's exercise of his constitutional rights.  *See Farmer v. Cleveland Pub.  Power*, 295 F.3d 593, 599 (6th Cir. 2002).

The Court must utilize a two-part test to determine if Plaintiff's speech is entitled to

constitutional protection. *Id.* Plaintiff must first establish that his speech was related to a matter of public concern. *Id.*(*citing Connick v. Myers*, 461 U.S. 138, 146 (1983). This first step is "a purely legal question." *Id.* Speech is related to a matter of public concern if "it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* (citation omitted). If the speech at issue is only of interest to the particular speaker then it is not entitled to First Amendment protection. *Id.* Once Plaintiff establishes that his speech involved a matter of public concern, the Court must then balance "[P]laintiff's free-speech interests against the government's interests as an employer." *Id.*

Plaintiff has stated a claim under the First Amendment upon which relief may be granted. Plaintiff asserts that he filed numerous complaints regarding racial inequality and harassment and that his Caucasian supervisors were intoxicated while at work. Plaintiff may be able to show that these are matters of public concern, that are not only of interest to Plaintiff, but also of interest to the community as a whole and may outweigh the government's interests as an employer. Plaintiff further stated that Defendants deliberately and intentionally harassed, negatively evaluated, and terminated him because of his protected speech, and that these adverse consequences would likely chill a person of ordinary firmness from engaging in similar activity. This Court cannot find as a matter of law that Plaintiff can prove no set of facts which would entitle him to relief. *Varljen*, 250 F.3d at 429.

### G. Qualified Immunity

Qualified immunity is generally a threshold defense whose applicability is to be determined by the trial judge. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). Governmental officials are entitled to qualified immunity when their discretionary acts do "not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). The Supreme Court has set forth a two-part test to determine whether qualified immunity should attach.

First, the court must decide whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). If there is no such violation, the inquiry ends here. *Id*. If a violation can be adequately stated, the court next asks whether the right was clearly established. *Id*. Providing guidance in determining whether a right was clearly established, the Court stated, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." *Id*. *Saucier* also provides that an official's reasonable mistake is still cloaked with immunity. *Id*. Plaintiff must show that the officers violated a right so clearly established that any official in Defendants' positions would have understood that they were under an affirmative duty to refrain from such conduct. *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989). In other words, Plaintiff must demonstrate that Defendants conduct was objectively unreasonable in light of Plaintiff's clearly established rights. *See Williams v. Mehra*, 186 F. 3d 685, 691 (6th Cir. 1999).

The Court has already addressed and answered in the affirmative the issue of whether Plaintiff has stated claims of constitutional violations. The Court further finds that Plaintiff has stated a claim that reasonable officials in Defendants' positions, taking the allegations in Plaintiff's Complaint as true, would understand that their conduct was unconstitutional.

    **H.**    **11th Amendment Immunity claim**

The Eleventh Amendment grants sovereign immunity to the states and has been interpreted to prohibit actions in federal court against a state by its own citizens or citizens of other states. *See Freeman v. Michigan, Dep't of State*, 808 F.2d 1174, 1177 (6th Cir. 1987). Defendants are correct that the State of Michigan is entitled to Eleventh Amendment Immunity. Plaintiff's § 1983 claims against the State of Michigan and Defendant-Officers in their official capacities are dismissed with prejudice. *Will v. Department of Corrections*, 465 U.S. 89, 100 (1984).

In support of Defendants' argument that they cannot be liable in their individual capacities under Title VII, Defendants rely on *Wathen v. General Electric Co.*, 115 F. 3d 400 (6th Cir. 1997). The *Wathen* court held that a supervisor cannot be liable under Title VII in his individual capacity. However, the State of Michigan, as well as Defendants, acting in their official capacities, are not entitled to Eleventh Amendment Immunity on Plaintiff's Title VII claims. *See Johnson v. University of Cincinnati*, 215 F. 3d 561, 571 (6th Cir. 2000)*.*

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED that Defendants' Motion to Dismiss** [Docket No. 12, filed on March 31, 2006] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against the State of Michigan and Defendants, to the extent they seek redress from Defendants in their official capacities, are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's claims brought pursuant to Title VII of the Civil Rights Act of 1964 against Defendants, to the extent they seek redress from Defendants in

their individual capacities, are DISMISSED WITH PREJUDICE.

      IT IS FURTHER ORDERED that a Status Conference will be held on May 29, 2007 at 3:30 p.m.

|  |  |
|---|---|
|  | /s/ Denise Page Hood |
|  | DENISE PAGE HOOD |
| Dated: April 10, 2007 | United States District Judge |

      I hereby certify that a copy of the foregoing document was served upon counsel of record on April 10, 2007, by electronic and/or ordinary mail.

                                          S/William F. Lewis
                                          Case Manager