**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREDDIE McCOY,

      Plaintiff,

                                Case No. 06-10837-DT

v.

                                HONORABLE DENISE PAGE HOOD

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF CORRECTIONS,
JEANNE HIGGINS, KENNETH ROMANOWSKI,
GERALD CONWAY, EDDIE CARGOR,
KATHY WARNER and JOHN JUNGLING,

      Defendants.

_____/

**ORDER AND OPINION RE DISPOSITIVE MOTIONS,**
**ORDER DISMISSING INDIVIDUAL DEFENDANTS**
**AND**
**NOTICE OF STATUS CONFERENCE DATE**

**I.**      **BACKGROUND/FACTS**

On February 24, 2006, Plaintiff Freddie McCoy ("McCoy") filed the instant suit against various Defendants including:  the State of Michigan, the Michigan Department of Corrections ("MDOC"), Jeanne Higgins, Kenneth Romanowski, Gerald Conway, Eddie Cargor, Kathy Warner, and John Jungling. McCoy claims that his termination constitutes race discrimination and retaliation for protected union activity under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and violates equal protection, due process, and the First Amendment under 42 U.S.C. § 1983. McCoy also alleges a violation of the Michigan Elliot-Larsen Civil Rights Act MCL 37.2201, *et seq.*  (Doc. 1, Comp.)

Prior to the instant suit, McCoy filed various actions against the MDOC. McCoy's first suit

followed his termination in 1997 after a series of rule infractions. McCoy was ultimately reinstated. McCoy brought suit in state court on May 3, 1999 ("1999 state court case"), alleging that he was disciplined in a discriminatory manner based on his gender. The state court dismissed the suit with prejudice on November 3, 2000, but granted McCoy fifteen days to amend his complaint. The state court granted Defendants' Motion for Summary Disposition on November 24, 2004.

Plaintiff filed a second lawsuit on October 4, 2001 ("2001 federal court case") in the U.S. District Court for the Eastern District of Michigan, claiming gender and race-based discrimination. *McCoy v. MDOC,* Case No. 01-73785 (Taylor). The 2001 federal lawsuit was dismissed with prejudice on April 4, 2002.

McCoy filed two petitions for review challenging the decisions of the Michigan Department of Civil Rights in connection with complaints filed involving his employment. *McCoy v. Michigan Department of Civil Rights,* Genessee County Circuit Court, Files No. 05-082829-AA and 05-082854-AA. These two cases were pending at the time Defendants' filed their initial Motion to Dismiss on March 31, 2006. On August 21, 2006, the state court judge entered an Order Granting Defendants' Motion to Dismiss with prejudice in Case No. 05-82829-AA. There is no indication as to the resolution of Case No. 05-082854-11.

On February 24, 2006, McCoy filed the present lawsuit. In its initial Motion to Dismiss, Defendants argued that the Plaintiff's claims were barred by *res judicata*, qualified immunity, and sovereign immunity. On April 10, 2007, the Court entered an Order granting in part and denying in part Defendants' Motion to Dismiss. On March 31, 2008, the Court entered an Order granting Defendants' Motion for Reconsideration and the case was dismissed based on *res judicata*. McCoy filed a Notice of Appeal.

The Sixth Circuit Court of Appeals issued an Opinion on March 12, 2010 reversing this Court's grant of the Defendants' Motion to Dismiss.  The Sixth Circuit found that McCoy's current case was not barred by the doctrine of *res judicata*. *McCoy v. State of Michigan,* Case No. 08-1641 (6th Cir. Mar. 12, 2010)(unpublished).  The Sixth Circuit affirmed the Court's conclusion that Defendants, in their official capacities, are entitled to sovereign immunity on the 42 U.S.C. § 1983 claims.  The Section 1983 claims against the State of Michigan, the MDOC and the individuals in their official capacities are dismissed.  However, sovereign immunity claims as to the employer 42 U.S.C. § 2000e *et seq.* ("Title VII") remain.  The Sixth Circuit found that a suit against the individual Defendants in their individual capacities is precluded under Title VII because they are not alleged to have been McCoy's employers but that the Section 1983 suit remains as to the individual Defendants in their individual capacity.  The matter was remanded for further proceedings.  The mandate issued on April 6, 2010.

The Sixth Circuit found the events on and following June 14, 2004 most relevant to the case at hand. On this date, McCoy was working during his assigned shift when he asked Higgins for permission to leave his post for lunch. McCoy alleges that Higgins granted permission but later accused him of leaving his post without relief, and informed him that he would be subject to disciplinary action for his violation of two MDOC policies.  Although McCoy continued to work during the MDOC's investigations of the alleged infractions, McCoy was terminated following a hearing on September 13, 2004, which cited the incidents of June 14, 2004.

On remand, Defendant MDOC filed a Motion to Dismiss or Summary Judgment.  The individual Defendants filed a separate Motion to Dismiss or for Summary Judgment.  Defendants file their motions under Rules 12(b)(1) or (6) and Rule 56(a) of the Rules of Civil Procedure.

Responses and replies have been filed.  A hearing was held on the matter.

## II.   ANALYSIS

### A.   Standard of Review

Rule 12(b)(1) provides for dismissal for lack of jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1). Motions under Rule 12(b)(1) fall into two general categories: facial attacks and factual attacks. S*ee, RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996).  A facial attack challenges the pleading itself.  In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in light most favorable to the non-moving party.  *Id.*  Where subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.*  In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id.*

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted).  Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete

4

negative gloss on an accepted pleading standard." *Id.* at 563.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.  Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation." *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009).  In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief.  *Id.*  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show [n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).  The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may  also be taken into account.  *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The presence of factual disputes

5

will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B.    *Res Judicata***

The MDOC and the individual Defendants again argue that *res judicata* applies to the instant case based on the cases cited before the Genessee Circuit Court. McCoy responds that the Sixth Circuit has ruled on the *res judicata* argument.

The Sixth Circuit found that although state court actions involved claims of discrimination and retaliation, they did not result from the same MDOC actions: "The gravamen of McCoy's federal complaint is that his 2004 termination and the activities and complaints surrounding that termination, which took place from June 2004 onward, are, despite everything that may have

6

occurred previously, themselves actionable.  In essence, the origin of the two claims is simply not the same." *See McCoy, supra,* at 9.  The Sixth Circuit found that new and independent claims were not barred under *res judicata* even though they could have been resolved in previous litigation. *Id.* The Sixth Circuit found the events on and following June 14, 2004 most relevant to the case at hand when McCoy was working during his assigned shift and asked Higgins for permission to leave his post for lunch.

The Genessee Circuit Court cases cited by Defendants do not involve the June 14, 2004 incident.  Case No. 05-82829-AA involved a July 31, 2002 incident where McCoy was charged with work rule violations #10, Class 1 Insubordination, and #32, Inattention to Duty.  (Ex. 6, MDOC's motion, Doc. No. 73-7, ¶ 19)  Case No. 05-82354-AA involved a May 27, 2002 incident where McCoy was charged with a violation of work rule #36, Failure to Take Count.  As the Sixth Circuit noted, the events at issue in the instant case involve the June 14, 2004 incident where McCoy alleges that Higgins granted him permission to leave, but later accused him of leaving his post without relief.  McCoy was charged with violations of work rules #30, Proper Duty Relief, and #31, Failure to Take Proper Security Precautions.  *Res judicata* does not apply in this case based on the two cases filed before the Genessee Circuit Court.  This Court is bound by the ruling issued by the Sixth Circuit.

### C.    Race Discrimination under Title VII

#### 1.    *Prima Facie* Case

The MDOC moves to dismiss McCoy's claim of race discrimination under Title VII.  McCoy responds that the evidence against the MDOC is mountainous and the motion should be dismissed.

Under the burden shifting approach developed for Title VII cases in *McDonnell Douglas*

7

*Corp. v. Green*, 411 U.S. 792 (1972), a plaintiff must establish a *prima facie* case and create a presumption of discrimination by showing by a preponderance of the evidence: (1) that he/she belongs to a protected class; (2) that he/she was subjected to an adverse employment action; (3) that he/she was qualified for the job; and (4) that he/she was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); and *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999). Alternatively, a plaintiff could establish a prima facie case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir. 1987).

If a plaintiff proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

For purposes of its motion only, the MDOC acknowledges that McCoy, an African-American, is a member of a protected class; that he was subject to an adverse employment action when he was terminated in 2004; and that he was qualified for the position of corrections officer.

8

(MDOC Br., p. 12)  The MDOC argues that McCoy is unable to show that he was subjected to disparate treatment compared to similarly situated employees.  McCoy states that both African-American and Caucasian corrections officers routinely left their posts without proper duty relief and these violations of Rules 30 and 31 went unpunished.  (McCoy 2008 Dep., pp. 140-142)  The MDOC claims that McCoy has not pointed to any individual leaving his or her post and abandoning an entire housing unit knowing that the only other corrections officer on the unit was away from his or her post.

In response, McCoy claims he filed a grievance based on race discrimination because he was discharged due to his race, indicating he is aware of White employee who left without proper duty coverage, but was never disciplined.  (Doc. No. 85, Resp., Ex. V).  McCoy does not identify any specific employee who was not disciplined for leaving his or her post without proper duty coverage who were not disciplined.

An employee whom a plaintiff seeks to use as a comparable must be similarly-situated in "all of the relevant respects."  *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).  The failure to identify a similarly situated employee who was treated more favorably than plaintiff is fatal to the plaintiff's claim under a disparate treatment theory.  *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992).  The similarly situated employee must have the same supervisor, be subject to the same standards and engaged in conduct of comparable seriousness to Plaintiff.  *Id.*

In this case, McCoy does not identify one employee similarly situated to him who was treated more favorably than McCoy.  McCoy has failed to state a *prima facie* case of employment discrimination based on race.

### D.     Retaliation under Title VII

The MDOC also moves to dismiss the retaliation claim under Title VII claiming McCoy is unable to establish a *prima facie* case.  McCoy responds that there are genuine issue of material fact preventing summary judgment on this claim.

The elements of a *prima facie* case of under Title VII and the Elliott Larsen retaliation claims are the same: 1) that plaintiff engaged in an activity protected by Title VII or Elliott Larsen; 2) that the defendant knew of this exercise of plaintiff's protected rights; 3) that defendant consequently took an employment action adverse to plaintiff; and 4) that there is a causal connection between the protected activity and the adverse employment action.  *Balmer v. HCA, Inc.,* 423 F.3d 606, 613-14 (6th Cir. 2005); *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003).

Causation can be proven indirectly through circumstantial evidence such as suspicious timing.  *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523, 525 (6th Cir. 2008).  Temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim where an adverse employment action occurs very close in time after an employer learns of a protected activity.  *Id.* at 525.  Where the nexus is not "very close," the Sixth Circuit has declined to find a causal connection based on timing alone.  *Id.* at 523.  In such a case, the plaintiff must proffer additional evidence of retaliatory conduct to establish a causal connection between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 364 (6th Cir. 2001).  A combination of evidence may include other employees' fear of retaliation, repeated comments regarding discipline, atmosphere where a plaintiff's activities were scrutinized more carefully than those of comparably situated employees, both black and white, more unwarranted criticism of plaintiff's work, and more

frequent disciplinary writeups of plaintiff for trivial matters.  *Id.*

In this case, McCoy argues that given his history of filing various complaints and grievances against MDOC employees and supervisors, he has stated a *prima facie* case of retaliation.  McCoy submitted in exhibit C of his response a chronological listing of all the harassment claims against McCoy and all the grievances and complaints McCoy filed against the MDOC and various employees since 1997.  (Doc. No. 78, Resp., Ex. C)  As the Sixth Circuit made clear, "the events in the state-court litigation are far removed temporally from the facts and claims asserted in the instant case."  *McCoy, supra,* at 8.  "Although the complaint mentions that from '1999 through 2003' McCoy 'was personally involved in filing numerous internal complaints alleging racial discrimination," ... "this statement cannot be read as comprising the asserted cause of action; it is mere background information on the somewhat tumultuous relationship between the parties."  *Id.* The Sixth Circuit noted that if "it is obvious that the alleged ongoing retaliation is actually the defendant continuing on the same course of conduct, which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim."  *Id.* at 10.  Based on the Sixth Circuit opinion, the Court will not look to events prior to 2004 to form the basis of McCoy's retaliation claim.

Applying the *prima facie* factors in this case based on 2004 events, McCoy has shown he was engaged in activities protected by Title VII.  McCoy was terminated on September 13, 2004. He filed a grievance on June 7, 2004 regarding time and attendance; an MDOC Harassment Report and Prevention Form Complaint on June 8, 2004 regarding false allegations of count errors; an internal MDOC Complaint regarding retaliation; a grievance on June 24, 2004 regarding work overtime; and, a September 11, 2004 MDOC Discriminatory Harassment Complaint form regarding

11

misuse of housing unit camera to harass black employees.  (Doc. No. 78, Resp., Ex. C)

McCoy has also shown that Defendants knew of his various grievances and complaint forms filed given that these were filed with the MDOC.  Although the MDOC claims that the ultimate decision maker terminating McCoy, Kathy Warner, was not aware of McCoy's numerous complaints, a closer review of her deposition shows otherwise.  Warner testified that she was not aware of complaints against staff members and supervisors alleging civil rights violations, rule violations and safety and health violations.  (Warner Dep., p. 29)  However, the discipline packets regarding the May and June 2004 issues involving McCoy, had McCoy's own statement listing some of the things he had complaint about and reported.  (Warner Dep., p. 29)  Warner testified that McCoy listed a couple of different things but she did not recall what was listed.  (Warner Dep., p. 29)  Part of the packet also included a handwritten by McCoy regarding a racist and retaliatory investigation because of the numerous civil rights complaints and pending lawsuits against the MDOC.  (Warner Dep., pp. 48-49)   In addition, the packet submitted to Warner and the recommendation to terminate McCoy was made by others who had knowledge of McCoy's various complaints and grievances in 2004.  (Doc. No. 78, Resp., Ex. C)

McCoy was terminated on September 13, 2004, which is undisputed in this case, which constitutes an employment action adverse to McCoy.  Regarding the causal connection, as noted above, McCoy filed various complaints and grievances beginning in June 2004, which was the same month as the alleged incident which Defendants claim was the basis of his termination in September 13, 2004, after hearings were conducted.  The time beginning in June 2004 through September 13, 2004 is not more than four months.  There is a genuine issue of material fact based on these various grievances and complaints that McCoy's September 13, 2004 termination may have been in

12

retaliation for the filing of these grievances and complaints.

Based on the above analysis, McCoy has shown a genuine issue of material fact that his termination in September 2004 was in retaliation to the various grievances and complaints McCoy made beginning in June 2004 against various officials in the MDOC. The Title VII claim of retaliation against the MDOC is denied.

### E.    Individual Defendants

#### 1.    Qualified Immunity

The individual Defendants move for summary judgment arguing that McCoy is unable to show his constitutional rights were violated and that they are entitled to qualified immunity. McCoy responds that there are genuine issue of material fact as to whether his constitutional rights were violated and that the individual Defendants are not entitled to qualified immunity.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The Supreme Court in *Saucier v. Katz* instituted a two-step inquiry to determine qualified immunity which inquiry was to be performed sequentially. In *Pearson v. Callahan,* 555 U.S. 223

13

(2009), the Supreme Court abandoned the requirement that the inquiry must be performed sequentially. Although courts are free to consider the questions in whatever order is appropriate, the Supreme Court ruled that the two questions announced in *Saucier v. Katz* remain good law and that it is often beneficial to engage in the two-step inquiry. *Pearson,* 555 U.S. at 236.

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987). As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

If no constitutional right has been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow,* 457 U.S. at 818.  The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987).  "Reasonableness" is a question of law to be decided by the trial court.  *Jeffers v. Heavrin,* 10 F.3d 380 (6th Cir. 1993).

## 2.    Constitutional Rights

McCoy asserts three constitutional rights violation against the individual Defendants:  first amendment retaliation, deprivation of procedural due process and violation of his right to equal protection.  Applying the first step in analyzing qualified immunity, each of these rights are addressed below to determine whether McCoy's constitutional rights have been violated by the individual Defendants.

### a.    First Amendment

To establish a First Amendment retaliation claim, a plaintiff must prove three elements:  (1) that the plaintiff was engaged in a constitutionally protected activity;  (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity;  and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.  *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000).  If the plaintiff can establish the three elements of his First Amendment retaliation claim, the burden of persuasion then shifts to the defendants, who must show, by a preponderance of the evidence, that they would have taken the same action even in the absence of the protected conduct. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)

15

To demonstrate that a plaintiff was engaging in constitutionally protected speech, he must show that his speech touched on matters of public concern, and that his interest in commenting upon matters of public concern outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Speech involves a matter of public concern when it involves "any matter of political, social, or other concern to the community." *Leary,* 349 F.3d at 899. This type of speech must be differentiated from a public employee's speech that involves matters of personal interest which are not protected. *Id.* A federal court is not the appropriate forum to review the wisdom of a personnel decision taken by a public agency in reaction to the employer's behavior. *Connick,* 461 U.S. at 147 (1983). While "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs," it does protect speech regarding any "matter of legitimate public concern," *Id.* at 145, 149. In cases involving employee speech, the court must engage in a two-part analysis. First, the court must determine whether the speech is related to a matter of public concern. If the commentary related only to matters of personal concern, the Court's inquiry would be, in most circumstances, at an end, and the plaintiff's claims should be dismissed. *Connick*, 461 U.S. at 147 ("We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."). If, however, the court determines the speech involved is a matter of public concern, the

16

court then must perform a balancing test to determine whether the government's interest in the efficient and effective provision of government services outweighed the employee's interest in speaking upon that particular matter. *Id.* at 150-54; *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). Speech that tangentially touches upon matters of political, social or other concern to the community will not rise to the level of protected speech if it is made as an employee addressing matters of only personal concern, rather than as a citizen addressing the community agenda. *Connick,* 461 U.S. at 147. Certain speech may be "mixed speech," which involves both personal and public matters. *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir.2001) (recognizing that the First Amendment protects speech involving "mixed questions of private and public concern, where the employee is speaking both as a citizen as well as an employee"); *Perry v. McGinnis*, 209 F.3d 597, 606 (6th Cir.2000) ( Because the speech served to ensure that the [state agency] was operating in accordance with the law, it concerns public matters.).

McCoy argues that his complaints and grievances, although communicated privately to his employer, is protected speech. In his response to the arguments by the individual Defendants, McCoy does not specifically identify which speech is protected and appears to argue all of his grievances and complaints are protected.

Looking at the events in 2004, McCoy's complaints and grievances, McCoy grieved Jungling's attendance memoranda and the 2004 paper incident where McCoy was told he could not bring papers into work which McCoy claims led to his termination in 2004. (McCoy Dep., p. 170) McCoy claims Cargor retaliated against him because he was the personnel manager and controlled everything in the disciplinary conferences. (McCoy Dep., pp. 160-62, 171-73) McCoy also claims that Romanowski, the warden, had complete discretion as to how to, or whether to proceed on

17

matters against McCoy and was aware of the numerous complaints McCoy had filed against him and the facility. (McCoy Dep., pp. 166-67, 174) Regarding Higgins, McCoy claims she has a pattern of investigations directed at black employees and influenced the June 14 allegation by lying about the incident and because she is Conway's direct supervisor. (McCoy Dep., pp. 167, 174-75) McCoy asserts that Conway retaliated against him because during investigations, he would omit certain probing questions and the investigation was always one-sided against McCoy. (McCoy Dep., pp. 164-65) As to Warner, she is the person who terminated McCoy and McCoy claims she received the recommendation but did not thoroughly review the evidence and simply relied on everything written by Cargor. (McCoy Dep., p. 173)

It appears that McCoy's complaints and grievances in 2004 involve his status as an employee and relate to certain work rules McCoy was alleged to have violated, such as leaving his post, attendance issues and bringing private papers involving his complaints and grievances into work. McCoy has not identified that any of his complaints and grievances touch on a matter of public concern to the community, such as the health and well-being of others, including prisoners. The identified complaints appear to be internal management-staff issues. McCoy has failed to establish that his speech is protected under the First Amendment. McCoy's First Amendment retaliation claim must be dismissed.

**b.     Procedural Due Process**

McCoy alleges a procedural due process claim asserting that his pretermination hearing was meaningless and predetermined. Defendants argue that McCoy received his due process rights in accordance with the collective bargaining agreement, the Civil Service Rules and various policies and procedures.

18

Due process requires some sort of pretermination hearing. *Farhat v. Jopke,* 370 F.3d 580, 595 (6th Cir. 2004). Due process requires that the public employee be given "oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Buckner v. City of Highland Park,* 901 F.3d 491, 494 (6th Cir. 1988). The Sixth Circuit has held that in the pretermination state, the employee does not have a right to, and the Constitution does not require, a neutral and impartial decision maker. *Farhat,* 370 F.3d at 595.

In this case, McCoy admits to receiving notification by Cargor of his disciplinary conference scheduled for August 3, 2004. (McCoy Dep., pp. 120-24) McCoy received the investigation report and supporting documentation prepared by Conway on July 25, 2004, prior to the conference. (McCoy Dep., pp. 123-24) McCoy attended the conference with his union representative, Charles Wright. (McCoy Dep., p. 125) Included in the investigation packet was McCoy's own handwritten notes about the incident. (McCoy, Dep., pp. 123-124, 184-85) McCoy argues that he did not receive the security camera videotape prior to the hearing showing that McCoy was in the food service area instead of his post. However, the videotape merely confirms what McCoy admits to–that he was in fact not at his post but was in the food service area. McCoy's claim is that Higgins lied in her statements because Higgins had given McCoy permission to leave his post for a lunch break. Whether or not McCoy received the videotape prior to the hearing does not render the conference meaningless. McCoy received the required due process in that he received notice of the charges against him, he received the evidence relied on by the MDOC, McCoy had the opportunity to present his side of the story and McCoy had representation at the hearing. McCoy's procedural due process claim must be dismissed.

19

c.      **Equal Protection Clause**

The individual Defendants argue that McCoy's Equal Protection claim must fail as a matter of law for the same reasons his Title VII race discrimination claim must fail.  McCoy asserts that he has provided an abundance of evidence proving that Defendants favor white employees and specifically treated him unfavorably, in part, because he is black.

The Fourteenth Amendment equal protection clause requires that a plaintiff must demonstrate that similarly situated individuals were treated differently and this difference was based on invidious discrimination.  *Nordlinger v. Hahn,* 505 U.S. 1 (1992).  "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."  *Tri-Health, Inc. v. Board of Commissioners,* 430 F.3d 783, 788 (6th Cir. 2005).  Claims of employment discrimination under § 1983 must be analyzed using the same analytical framework applicable to Title VII actions.  *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir. 2000).

For the same reasons set forth above as to McCoy's Title VII race discrimination claim, McCoy's equal protection claim against the individual Defendants must be dismissed.

**III.    CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendant Michigan Department of Correction's Motion to Dismiss or for Summary Judgment **(Doc. No. 73, filed 7/23/2011)** is GRANTED IN PART and DENIED IN PART.  The Title VII retaliation claim remains as to the Defendant employer (State of Michigan and/or the Michigan Department of Corrections).

IT IS FURTHER ORDERED that the individual Defendants' Motion to Dismiss or for

20

Summary Judgment (**Doc. No. 74, filed 7/22/2011**) is GRANTED.

IT IS FURTHER ORDERED that Defendants Jeanne Higgins, Kenneth Romanowski, Gerald Conway, Eddie Cargor, Kathy Warner and John Jungling are DISMISSED with prejudice.

IT IS FURTHER ORDERED that a Status Conference is set for the remaining parties for **April 17, 2012, 2:15 p.m.** The parties must be prepared to discuss any remaining discovery matter. The Court will set a Final Pretrial Conference and Trial Dates at the conference.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 16, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 16, 2012, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

21